### Rust-Owen Lumber Co. v. Wellman *et al.*

1. Plaintiff furnished lumber to a bridge company, and testified that he dealt with the individuals connected with the company as with a co-partnership, and he did not know it was incorporated until he signed the complaint in the suit. *Held*, that the issue of partnership should be submitted to the jury, for, though there was a corporation, its officers and agents might, by their conduct, bind themselves individually as co-partners.

2. The fact that plaintiff's agent contracted for stock in a corporation which was never delivered, where plaintiff testified he did not know of the filing of articles of incorporation until the commencement of the suit, is not sufficient to justify a legal conclusion that plaintiff had knowledge of the existence of the corporation.

3. One dealing with the Pierre & Ft. Pierre Bridge Company is not charged with notice of its incorporation from its name alone.

(Opinion filed July 14, 1897.)

Appeal from circuit court, Hughes county. Hon. H. G. FULLER, Judge.

Action to recover for lumber alleged to have been sold to defendants as partners. Defendants had judgment and plaintiff appeals. Reversed.

The facts are stated in the opinion.

*Crawford & DeLand* and *Thomas Drake* for appellant.

*A. Gunderson, John Sutherland* and *Joseph Donahue,* for respondents.

CORSON, P. J. The court below directed a verdict for the defendants, and the plaintiff appeals. The action was for lumber alleged to have been sold and delivered to defendants as partners. The defendants claim that the lumber was sold and delivered to the Pierre & Ft. Pierre Pontoon Bridge Company, a corporation, and that the defendants are not liable as individuals or partners. The motion for a direction of a verdict was made upon the following grounds: "The defendants moved the court to instruct the jury to return a verdict in their favor, for the reason that the plaintiff wholly failed to establish a copartnership, and to connect the defendants, as individuals, with any transaction in reference to the claim sued upon; that the evidence in this case shows that the contract for the goods and chattels mentioned in the complaint was made with and delivered to the Pierre & Ft. Pierre Pontoon Bridge Company, a corporation, and that the defendants are not legally connected under the issues in this case, and plaintiff has wholly failed to prove any of the issues alleged in its complaint, or any liability of any of the defendants, jointly or severally, to the plaintiff in this case, for any sale or delivery of lumber or materials to them or either of them." The only question, therefore, to be considered is: Was there evidence tending to prove that the defendants contracted the debt for the lumber as partners or individuals, that would have justified a verdict against them?

The plaintiff was a lumber company, doing business in Pierre, and the defendants were residents of Pierre and Ft. Pierre. Mr. Owens, who was agent of the plaintiff at Pierre, and who made the contract to furnish the lumber for the bridge, after detailing the various conversations had by him with the defendants Sutherland, Wells. Wellman and Steere, says: "After these conversations, lumber and material was sold. I was furnishing from that time until Mr. Wells stopped it. After he said not to furnish any more, that they did not want to build any such bridge as this man was going to put up, I stopped the sale of lumber. The delivery of lumber ceased in the latter part of August. 1890. * * * I know of the defendants John Sutherland, W. S. Wells, W. I. Wellman and Eugene Steere having been engaged in the erection of a pontoon bridge across the Missouri river during the months of April and May, 1890. The lumber to which I have referred in my testimony was used by these parties in the construction of such a bridge. * * * I know the name by which these parties to whom I have referred conducted the business of constructing this bridge, in the construction of which the lumber which I sold, of which I have testified, was sold. Their name, the name under which they conducted this business, was the Pierre & Ft. Pierre Pontoon Bridge Company. I extended this credit to them at the time they were associated, under this name, in the enterprise of constructing and building this bridge to which I have testified." On cross-examination he testified as follows: "I dealt with these parties as a co-partnership. They were all in, those four men, and I supposed were reliable; and they were going on to build the bridge four or five of them. I relied at that time mostly upon Mr. Wells, Wellman, Sutherland and Steere. I supposed that, when they took hold of a thing, it was all right. I didn't know they were a corporation. I knew they attempted to organize. I didn't know until I signed the original complaint in this action that the defendants had filed with the secretary of state certain articles of incorpora-

tion. That was the first time my attention was called to it. My attorney called my attention to it, and that was the first time I knew about it." On the part of the defendant it was shown that in March, 1890, articles of incorporation of the Pierre & Ft. Pierre Pontoon Bridge Company were filed in the office of the secretary of state and the usual certificate issued. The persons who signed and acknowledged the articles were Vernett E. Prentice, Willard I. Wellman, John Sutherland and Eugene Steere. No stock appears to have been subscribed for or issued, and no by-laws were adopted. Whether any officers were elected does not appear. Articles of incorporation having been filed, and the proper certificate issued the corporation became a body politic and corporate, by the name and for the purposes stated in the articles. Manufacturing Co. v. Peck (S. D.) 67 N. W. 947. The defendants could therefore have contracted as a corporation, and not as individuals or as a co-partnership.

It is quite apparent from the evidence of Mr. Owens that his company understood it was furnishing the lumber to the defendants as individuals or as partners, and not to a corporation; and there certainly was some evidence tending to prove that the defendants were constructing the bridge as individuals or partners, and not as a corporation. It was a question, therefore, of fact, for a jury to determine, whether or not the defendants contracted as partners for the lumber, or as a corporation. It was competent for the defendants, notwithstanding the incorporation, to ignore such corporation, and proceed to construct the bridge as individuals or as a co-partnership; and if they so conducted their business as to cause the plaintiff to believe they were constructing the bridge as individuals, and not as a corporation, and the plaintiff contracted with them as individuals, and not as a corporation, and gave credit to them as individuals, and not as a corporation, they would be personally liable. The contention that there was no evidence tending to prove that the defendants constituted a partnership is not

sustained by the record.    There was evidence upon which a jury might have found that the defendants did construct the bridge as partners, and also evidence that they constructed the bridge as a corporation.    Whether or not, as between themselves, there was any agreement of co-partnership, is not material, if their acts and conduct were such as to lead the plaintiff to believe they were constructing the bridge as co-partners or as individuals, and not as a corporation, and credit was extended to them as such partnership or as individuals, and not as a corporation.    These were questions of fact for the jury.

Respondents contend that the plaintiff had notice that the defendants were contracting as a corporation, because plaintiff's agent had notice, he having contracted for stock in the corporation.    But no stock was, in fact, delivered to him, and he testifies that he did not know that the proposed company had filed its articles of incorporation until about the time this action was commenced.    A court could not say, as matter of law, that the plaintiff had knowledge of the existence of the corporation.    It was a question of fact for the jury.

Respondents further contend that the name in which the defendants contracted was notice to the plaintiff that the defendants were conducting their business as a corporation.    It is true that the name of the Pierre & Ft. Pierre Bridge Company indicates that the company was a corporation or an association of some kind, but, as the defendants could have assumed that name by which to transact their business as a partnership, the name did not necessarily charge the plaintiff with notice that the company was incorporated.    Had the corporation brought an action as a corporation in that name, it would have been necessary for it to allege its incorporation and prove it, if it was expressly averred in the answer that the plaintiff was not a corporation.    Comp. Laws, § 2908; State v. Chicago, M. & St. P. Ry. Co., 4 S. D. 261, 56 N. W. 894.

We have not thus far noticed the evidence for the defendants as to the character in which they contracted, but it is

sufficient to say that there was evidence on the part of the defendants tending to prove that the contract for the lumber was made by the agents of the corporation and not by the defendants personally or as partners; and a jury would undoubtedly have been justified by the evidence in finding that the lumber was contracted for and delivered to the corporation, and not to the defendants as individuals. The evidence upon this question was conflicting, and we express no opinion as to its weight or probative force. But, being conflicting it was the duty of the court to have submitted it to the jury under proper instructions.

There were a number of exceptions taken to the rulings of the court in excluding and admitting evidence, assigned as error, and discussed in the briefs of counsel; but, as these questions may not arise on another trial, we do not deem it necessary to consider them. As the court committed error in directing a verdict, and not submitting the case to the jury, its judgment is reversed, and a new trial is ordered.

FULLER, J., took no part in this decision.